Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 210224-138142
DATE: July 14, 2021

ORDER

An initial rating of 70 percent for depression, for the entire period on appeal is granted.

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities is granted.

FINDINGS OF FACT

1. Resolving any doubt in favor of the Veteran, the Veteran's service-connected depression most nearly approximates occupational and social impairment with deficiencies in most areas throughout the period on appeal. 

2. Resolving any doubt in favor of the Veteran, the Veteran's service-connected disabilities preclude him from securing or following a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for an initial 70 percent rating, but no higher, for depression have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.21, 4.126, 4.130, Code (DC) 9434.

2. The criteria for entitlement to a TDIU due to service-connected disabilities have been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty is the U.S. Marine Corps from August 1968 to August 1972. 

The rating decision on appeal was issued by the agency of original jurisdiction (AOJ) in November 2020 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. The AOJ granted service connection for depression in November 2020, with initial staged ratings of 70 percent effective May 8, 2012, 10 percent effective November 8, 2017, and 50 percent effective September 24, 2020. In February 2021, the Veteran submitted a VA Form 20-0996, Decision Review Request: Higher-Level Review (HLR). In February 2021, the AOJ issued the HLR decision on appeal, which considered the evidence of record at the time of the initial rating decision. In the February 2021 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the November 2020 AOJ initial rating decision on appeal. 38 C.F.R. § 20.301. This claim has been advanced on the docket pursuant to 38 C.F.R. § 20.900.

Increased Rating

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

1. An initial rating of 70 percent for depression and continuing throughout the period on appeal

As an initial matter, the Veteran's representative indicated in the February 2021 request for Higher-Level Review and the February 2021 VA Form 10182 that the agency of original jurisdiction (AOJ) effectuated an improper rating reduction when assigning initial staged ratings for depression. The U.S. Court of Appeals for Veterans Claims (Court) has specifically addressed and disagreed with that contention. In contrast to a "reduction" case that is potentially subject to the provisions of 38 C.F.R. §§ 3.105 (e), 3.343, and 3.344, what occurred in the Veteran's case was that the AOJ issued an initial "staged" rating. The Court has stated that at the time of an initial rating for a disability following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on facts found. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The United States Court of Appeals for the Federal Circuit has similarly ruled that the due process protections found in 38 C.F.R. §§ 3.343 and 3.344 do not apply in these circumstances where an initial staged rating is assigned and there is no reduction in evaluation compared to the disability rating in effect prior to the initiation of the appeal process. Reizenstein v. Shinseki, 583 F.3d 1331, 1335 (Fed. Cir. 2009). Consequently, the Board finds that the Veteran's representative's contention that the AOJ effectuated an improper rating reduction when assigning initial stage ratings for an acquired psychiatric disorder is without merit.

The Veteran's primary contention is that he is entitled to a 70 percent rating throughout the period on appeal. The Board now turns to the matter of whether the staged rating determined by the AOJ was appropriate. The Veteran's depression is rated under 38 C.F.R. § 4.130, DC 9434 for major depressive disorder. The Veteran has been assigned a staged rating as discussed above. 

Under the General Rating Formula for Mental Disorders, a 10 percent rating is warranted for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress or symptoms controlled by continuous medication. 38 C.F.R. § 4.130.

A 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing effective work and social relationships. Id.

A 70 percent rating is assigned when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. 

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id. 

Symptoms listed in the General Rating Formula for Mental Disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). A Veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). Additionally, while symptomatology should be the primary focus when deciding entitlement to a given disability rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused the requisite occupational and social impairment. Id.

The Veteran's VA medical records demonstrate that throughout the period on appeal the Veteran has struggled with major depression and anxiety, hypersensitivity, irritability, avoidance, nervousness around others, chronic sleep problems, lack of motivation, hopelessness, and low energy. The Veteran has stated that he avoids being around people, including his own family members. A February 2013 VA psychiatrist outpatient note indicates the Veteran reported that "if there is more than he and his wife in the house he gets so nervous he has to leave."

A February 2016 private medical opinion and mental disorder Disability Benefits Questionnaire (DBQ) from H.G., Ph.D., based on a telephone interview, has been submitted. Upon review of the examination and opinion the Board finds that the examination and opinion are thorough, critical elements used for applying the rating criteria were addressed, the Veteran's reactions to questions and responses were assessed, reasoned opinions and bases for the conclusions were given, and the evidence of record was considered, including the Veteran's lay statements and those of witnesses. As such, the evidence provides probative evidence on the matter of the Veteran's rating; as well as probative evidence on the matter of entitlement to a TDIU, discussed below. 

It was noted that the Veteran was socially isolated and withdrawn. The Veteran stated that "I always feel down, I cry." The Veteran indicated ongoing difficulty with his symptoms pattern and that he no longer enjoys the simplest of activities. He expressed that he had increasing trouble with short-term memory. The Veteran did not report hallucinations. H.G. noted that the Veteran was anxious and nervous, the Veteran reported feeling anxious and depressed, and the Veteran was vague with response, suspicious, and seemed rather paranoid. H.G. indicated symptoms of depressed mood, anxiety, suspiciousness, near continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, mild memory loss, impairment of short term memory, memory loss for names of close relatives, own occupation or own name, flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or a work like setting, inability to establish and maintain effective relationships, neglect of person appearance and hygiene, and intermittent inability to perform activities of daily living. The examiner acknowledged that the Veteran's wife performs all of the household chores and manages the finances. It was also noted that the Veteran had to be reminded to shave, shower, change clothes, get a haircut, and only bathes once a week.

The private psychologist, H.G., Ph.D., HSPP, opined that the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood. Such findings and symptomatology approximate the rating criteria for a 70 percent rating.

The Veteran's sisters submitted statements in January 2016, the statements demonstrate that the Veteran was depressed, nervous, easily agitated, had become withdrawn, and had very poor personal hygiene. 

Based on such evidence, the Veteran was assigned a rating of 70 percent effective May 8, 2012. The Board finds the rating of 70 percent, effective May 8, 2012, appropriate as the evidence shows that the Veteran had deficiencies in most areas, particularly with personal and family relationships, near-continuous panic or depression affecting ability to function independently, appropriately and effectively, impaired impulse control, neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a work-like setting), and inability to establish and maintain effective relationships.

On November 8, 2017, the Veteran was afforded a VA mental health examination. Based on that examination, the AOJ assigned a rating of 10 percent from November 8, 2017 to September 23, 2020. The examiner determined that the Veteran had occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication. The examiner opined that the Veteran's depression is not due to his service-connected duodenal ulcer and that the depression was not caused by his military experience. The examiner recognized a single symptom of depression.

In this case, the evidence of record demonstrates that the Veteran has had continuing struggles with constant depression and anxiety, fits of crying, significant difficulties in being around people, sleep problems, and irritability, although the Veteran has implemented the mechanism of avoidance to prevent violent outbursts. The record also reveals, based on witness statements, that the Veteran has had a history of poor hygiene. His wife handles the household chores and the finances. However, the November 2017 examiner did not address any of these symptoms in the examination report and apparently did not discuss those issues with the Veteran. 

The Board must be able to conclude that a medical expert has applied valid medical analysis to the significant facts of the particular case in order to reach the conclusion submitted in the medical opinion." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); see also Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007) (holding that "a mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to a doctor's opinion"). Here, it does not appear that the November 2017 VA examiner considered the relevant facts. Furthermore, in forming the opinion, the examiner should have considered the lay witness assertions by the Veteran and the Veteran's sisters and discussed those issues with the Veteran. In making all determinations, the Board must fully consider the lay assertions of record. See Layno v. Brown, 6 Vet. App. 465, 470 (1994).

Therefore, because the November 2017 examiner did not consider all of the facts of record in assessing the Veteran's depression, the Board finds the November 2017 examination to be inadequate for rating purposes. This finding is further supported by the AOJ's grant of service connection for depression, despite the November 2017 examiner determining that the Veteran's depression is not related to his service-connected duodenal ulcer or events directly attributable to the Veteran's military service. Because the November 2017 examination is not probative to determine an evaluation, the record does not support a 10 percent staged rating for the period from November 8, 2017 to September 23, 2020. 

In September 2019, a private mental disorders examination was performed by K.G., Ph.D. Although the examination was performed over the phone, the examiner considered the Veteran's responses and demeanor, all the evidence of record, and provided extremely thorough and in-depth analysis in support of the opinions and conclusions. Therefore, the Board finds the September 2019 private mental disorders examination to be highly probative on the matter of the rating for depression. As discussed below, it is the most probative evidence of record regarding entitlement to a TDIU. 

The September 2019 examiner opined that the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgement, thinking and/or mood. The examiner noted that the Veteran had crying spells, was socially isolated, had no motivation, did not assist with any household chores, did nothing recreationally, and found little enjoyment in activities. It was acknowledged that the Veteran did not visit others and tolerated family coming to visit for a very short duration. The Veteran reported that he "feels nervous for no reason on a daily basis." He also said that "being around people can trigger me," and that "he is annoyed but I cope better than I used to, I don't go off on others so much." It was indicated that the Veteran had a persistent negative outlook, low motivation, and a low tolerance for frustration. 

The Veteran's symptoms were noted to be depressed mood, anxiety, near-continuous pan or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, impairment of short and long term memory, flattened affect, difficulty in understanding complex commands, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or a work like setting, inability to establish and maintain effective relationships, impaired impulse control, neglect of personal appearance and hygiene, and intermittent inability to perform activities of daily living. 

Based on the evidence, the Veteran's depression continued to be manifested by symptoms most similar to those contemplated by the criteria for a rating of 70 percent. 38 C.F.R. § 4.130, DC 9434. Rather, a higher rating of 70 percent must be continued beyond for the period from November 8, 2017 to September 23, 2020.

On September 24, 2020, the Veteran was afforded another VA mental disorders examination. Based on that examination, the Veteran was assigned a rating of 50 percent effective September 24, 2020. The examiner determined that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. However, the examiner stated that since 2012 the Veteran's condition has not significantly changed, despite a number of interventions.

The Veteran reported that he had limited socialization even with local family members, he was short with his wife for no reason, he was a couch potato, his medical issues were a concern, he had zero energy, he had no regular social activities, and he stopped visiting a senior center due to irritability. The Veteran stated that he stays in bed most times but may leave the bed to watch television. It was acknowledged that the Veteran worked for the USPS for 30 years, but he was able to do that job because he had limited interaction with people. The Veteran expressed that he had sleep disturbance including nightmares, irritability, sadness, had lost interest in previously enjoyed activities, and had frustration associated with lost abilities.

The examiner indicated symptoms of depressed mood, anxiety, chronic sleep impairment, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. The examiner stated that the Veteran had only limited improvement from interventions, and his psychiatric condition is a continuation of problems noted in 1970. 

Although the examiner indicated symptomology and occupational and social impairment described by a 50 percent rating under the General Rating Formula, the examiner clearly determined that the Veteran's depression had not improved. Based on the Veteran's statements and the descriptions by the examiner, the Veteran's depression continues to manifest with deficiencies in most areas, particularly with his inability to have personal and family relationships, near-continuous panic or depression affecting ability to function independently, appropriately and effectively, impaired impulse control, difficulty in adapting to stressful circumstances (including work or a work-like setting), and inability to establish and maintain effective relationships.

Based on the foregoing, the Veteran's depression has continued to be most closely associated with symptoms described under the criteria for a 70 percent rating during the entire period on appeal. Additionally, the evidence of record does not describe gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name to support a 100 percent rating. Although the symptom of memory loss for names of close relatives, own occupation, or own name was indicated in the February 2016 private examination, the statements of the Veteran, VA medical evidence, and witness statements does not support such a symptom, and the overall symptomology of the Veteran's depression does not approach a 100 percent rating. 

Accordingly, and having resolved all reasonable doubt in the Veteran's favor, the Board concludes that the evidence of record most nearly approximates the criteria for a 70 percent rating, but no higher, for depression, effective May 8, 2012, and the claim is granted to that extent. 38 C.F.R. § 4.3.

2. Entitlement to a TDIU

The Board notes that the issue of entitlement to TDIU benefits is part and parcel of the underlying increased rating issue. Rice v. Shinseki, 22 Vet. App. 447 (2009). The issue of entitlement to a TDIU has been raised in conjunction with the Veteran's increased rating claim for depression. The Veteran asserts that during the period on appeal he has been unable to follow substantially gainful employment due to his service-connected conditions, to include his symptoms of depression.

VA will grant a TDIU when the evidence shows that the Veteran is precluded, by reason of his service-connected disabilities, from securing or following "substantially gainful employment" consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a).

Here, the Board has determined that an evaluation of 70 percent, but no higher, is warranted for the entire period of the appeal. Thus, from May 8, 2012, the Veteran was in receipt of the 70 percent evaluation for depression. He was also in receipt of a 20 percent rating from August 26, 1972 for a duodenal ulcer, and a 0 percent rating from June 16, 2009, for a scar related to the duodenal ulcer. The Veteran met the schedular rating eligibility criteria for a TDIU since May 8, 2012, or during the entirety of the period of appeal of the underlying increased rating claim. As noted above, the Veteran worked for postal service for 30 years. See September 2020 VA mental health examination.

The February 2016 private opinion of H.G., Ph.D., determined that the Veteran's major depressive disorder prevents him from maintaining substantially gainful employment. A March 2016 private examination opinion from H.S., MD, also considered the Veteran's functional capacity. However, that opinion considered multiple conditions that are not service connected. Therefore, it is not probative on the matter. 

The September 2019 private examination of K.G., Ph.D., explains that the Veteran cannot tolerate the stress from a competitive work environment or be expected to engage in gainful activity due to his mental health problems. His longstanding depression, combined with poor coping skills and lacking insight, will likely result in an extremely low frustration tolerance, irritability, a negative attitude, deterioration of mental health symptoms and decompensation, and difficulty adjusting to a routine work schedule. His crying spells, low motivation, and difficulty being around others - even family - are the most problematic symptoms from an employability standpoint. It was also explained that difficulty being around others would cause the Veteran to isolate. His persistent negative outlook, low motivation, and a low tolerance for frustration would likely cause him to be off-task 80 to 85 percent of the time. His chronic sleep problems would exacerbate these issues, leading to irritability and lethargy. Fatigue would leave him vulnerable to making mistakes, creating potential safety issues in the workplace. His chronic mood issues would make him prone to becoming emotionally dysregulated. It was also determined that crying spells would be problematic and would slow productivity. When overwhelmed, frustrated, or embarrassed, it is expected he would walk off the job site with no notice.

K.G., Ph.D., also opined that the Veteran has been unemployable due to his duodenal ulcer since at least July 2013. A VA duodenal ulcer examination in February 2020, also indicates that the Veteran has a functional impact from the ulcer as pain from the stomach affects his ability to perform duties. 

The Veteran was afforded a VA TDIU examination in February 2020. The examiner provided a conclusory opinion that the Veteran is capable of performing sedentary work, but without any discernible rationale, particularly that considered the occupational impact of his depression. As such, the opinion is inadequate. Inadequate medical examinations include examinations that contain only data and conclusions, do not provide an etiological opinion, are not based upon a review of medical records, or provide unsupported conclusions. Nieves- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

The Board finds the opinion of K.G., Ph.D., to be the most probative evidence on the matter of the Veteran's ability to perform and maintain gainful employment, as the evidence of record was thoroughly addressed, reasoned opinions were provided, and detailed explanations for the conclusions were given. See Nieves-Rodriguez, 22 Vet. App. at 295.

Resolving any doubt in the Veteran's favor, the Board finds that he was unable to secure or follow a substantially gainful occupation due to his service-connected depression and duodenal ulcer. The appeal for a TDIU is granted.

 

 

B. CHATTERJEE

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board B. Temple, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.