# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1824

THOMAS F. CACCIOLA, APPELLANT,

V.

SLOAN D. GIBSON,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided          July 22, 2014)

*David Z. Bodenheimer* and *Gordon Griffin*, both of Washington, D.C., were on the brief for the appellant.

*Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Thomas E. Sullivan*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.[1]

Before KASOLD, *Chief Judge,* and SCHOELEN and PIETSCH, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed an opinion concurring in the result.

SCHOELEN, *Judge*: The appellant, Thomas F. Cacciola, appeals through counsel a March 29, 2012, Board of Veterans' Appeals (Board or BVA) decision that (1) dismissed the appellant's motion to reverse or revise on the basis of clear and unmistakable error (CUE) the Board's December 4, 2006, decision denying an effective date earlier than August 6, 1998, for the award of service connection for bilateral hearing loss; and (2) denied the appellant's motion to reverse or revise on the basis of CUE the Board's December 4, 2006, decision denying an initial compensable disability rating for the appellant's bilateral hearing loss disability. Record of Proceedings (R.) at 3-11. This

---

[1] Will A. Gunn was General Counsel for the appellee when his brief was submitted to the Court, but as of the date this decision was issued, Mr. Gunn had resigned.

appeal is timely, and the Court has jurisdiction to review the Board's March 2012 decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

In January 2010, the appellant had directly appealed the December 4, 2006, Board decision, and in a June 2011 single-judge memorandum decision the Court affirmed the December 2006 Board decision. The Court considered the issue regarding an initial-compensable-rating abandoned. *Cacciola v. Shinseki*, No. 10-0141, 2011 WL 2530942 (U.S. Vet. App. June 27, 2011) (mem. dec.).

This case was referred to a panel to address whether the law permitted the Board, in its March 2012 decision, to (1) dismiss the appellant's motion to reverse or revise the Board's effective-date determination, when the Court had previously affirmed the underlying decision, but (2) consider the merits of the appellant's motion to reverse or revise the denial of an initial compensable disability rating for bilateral hearing loss, which the Court deemed abandoned in the appellant's direct appeal of the 2006 decision. The Court sua sponte raises these questions to clarify whether a Notice of Appeal (NOA) places all final Board decisions on issues in the same document on appeal before the Court, and the preclusive effect, if any, of the Court's determination that an issue has been abandoned or was not otherwise raised on appeal.

For the reasons discussed below, the Court holds that an NOA places the entire Board decision on appeal. However, when an appellant expressly abandons an issue in his initial brief or fails to present any challenge and argument regarding an issue, the abandoned issue generally is not reviewed by the Court. Consistent with the Secretary's interpretation of 38 C.F.R. § 20.1400(b)(1) (2014), which precludes revision of final Board decisions on issues that have been *appealed to and decided by* a court of competent jurisdiction, the Court holds that an abandoned issue is not *decided by* the Court for purposes of determining the availability of a collateral attack based on CUE. Accordingly, in such instances, a claimant is not barred from bringing a motion to reverse or revise a Board decision on an abandoned issue. Upon review of the parties' arguments, the Court will affirm the Board's March 29, 2012, decision.

## I. BACKGROUND

The appellant honorably served on active duty in the U.S. Army from August 1950 to April 1952. R. at 2918. In April 2005, a VA regional office (RO) granted the appellant's claim for service

connection for bilateral hearing loss, but assigned him a noncompensable disability rating, effective November 27, 2000. R. at 1548-62. On appeal, the Board issued a decision on December 4, 2006, that awarded an earlier effective date, August 6, 1998, for the grant of service connection for bilateral hearing loss, but continued to deny an initial compensable disability rating. R. at 962-85. In denying a compensable rating, the Board reviewed February 1998, August 2000, and October 2004 VA audiological examination results, but found under the applicable rating criteria for hearing loss that the appellant's hearing impairment was not compensable. R. at 973-76. The Board also denied referral for extraschedular consideration, finding that there was "no basis for further action on this question as there [we]re no circumstances presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual." R. at 980.

Following an extensive history, the appellant filed through counsel an appeal of the December 4, 2006, Board decision to this Court. R. at 36. On June 27, 2011, the Court issued a memorandum decision that affirmed the December 4, 2006, Board decision. *See Cacciola*, *supra*. The Court identified the matter on appeal as "the December 4, 2006, decision of the Board . . . that denied entitlement to an effective date earlier than August 6, 1998, for the grant of service connection for bilateral hearing loss," and "deemed abandoned" the appellant's claim for an initial compensable disability rating because he had not raised any arguments in his brief with respect to that claim. *Cacciola*, 2011 WL 2530942, at *1. The Court addressed the appellant's arguments relating to the Board's denial of an effective date earlier than August 6, 1998, but found them unavailing. *Id*. at *2-4. Mandate issued on September 20, 2011. R. at 37.

In the March 29, 2012, decision here on appeal, the Board dismissed the appellant's motion to reverse or revise on the basis of CUE the December 4, 2006, decision with respect to the effective date. R. at 6. The Board found that the Court's June 2011 memorandum decision had affirmed the Board's 2006 decision on that issue and, therefore, 38 C.F.R. § 20.1400(b) precluded any challenge on the basis of CUE. R. at 8-9. Upon noting, however, that the Court in its June 2011 memorandum decision found the appellant to have abandoned the issue of entitlement to an initial compensable disability rating for bilateral hearing loss, the Board adjudicated the merits of the appellant's CUE motion on this issue, finding that he failed to demonstrate the kind of error that would have manifestly changed the outcome of the 2006 decision. R. at 9-15.

3

The appellant, then pro se, filed a timely NOA and submitted an informal brief disagreeing with the Board's decision on both CUE motions. Following a stay of proceedings, the appellant retained counsel and the Court granted the parties leave to submit supplemental briefs to address the panel issue identified by the Court – whether revision of a Board decision on the basis of CUE is available for an issue that is abandoned on appeal to the Court.

## II. PARTIES' POSITIONS ON THE PANEL QUESTION

In their supplemental briefs, the appellant and the Secretary agree that the governing statute and regulation do not preclude a claimant from seeking to reverse or revise on the basis of CUE a Board decision on an issue that was abandoned on appeal. Appellant's Supplemental Brief (Suppl. Br.) at 5-13; Secretary's Suppl. Br. at 9-17. The parties assert that "[a]ll final Board decisions" are subject to revision except decisions on issues that have been "*appealed to and decided by* a court of competent jurisdiction," and that *both* requirements must be satisfied to prevent the Board from adjudicating a motion to revise a Board decision on an issue. 38 C.F.R. § 20.1400(b). In this case, the parties aver that in its June 2011 memorandum decision the Court did not render a decision on the merits of the appellant's entitlement to an initial compensable disability rating, finding instead that the issue had been abandoned. Because the Court did not address the merits, the parties contend, the issue was not *decided by* the Court and, therefore, § 20.1400(b) did not preclude the Board's adjudication of the appellant's CUE motion in its March 2012 decision. Implicit in the Secretary's argument, which does not differ from the appellant's, is that the December 2006 Board decided two distinct issues, effective date and disability rating, which are separately reviewable by the Court or subject to revision on the basis of CUE, even though both issues relate to the appellant's claim for disability compensation for bilateral hearing loss. The parties disagree, however, on whether the Board decision on appeal is supported by an adequate statement of reasons or bases. Appellant's Suppl. Br. at 13-20; Secretary's Suppl. Br. at 17-23; Appellant's Reply Br. at 3-9.

## III. ANALYSIS

A request for revision on the basis of CUE is an exception to the rule of finality and is grounds to reverse or revise a decision by the Secretary. *See* 38 U.S.C. §§ 5109A, 7111; *DiCarlo*

*v. Nicholson*, 20 Vet.App. 52 (2006); 38 C.F.R. §§ 3.105(a), 20.1400-.1411 (2014). To initiate a request for revision, a claimant must file a CUE motion that collaterally attacks a final decision by an RO or the Board. *See Disabled Am. Veterans v. Gober (DAV)*, 234 F.3d 682 (Fed. Cir. 2000). Motions for revision on the basis of CUE had been governed by regulation from 1928 until 1997, when Congress enacted Pub. L. No. 105-111, 111 Stat. 2271 (1997) (codified at 38 U.S.C. §§ 5109A, 7111). *See Smith v. Brown*, 35 F.3d 1516, 1524-25 (Fed. Cir. 1994) (providing a history of the evolution of regulations describing CUE review); *see also Hillyard v. Shinseki*, 24 Vet.App. 343, 349 (2011) (*Hillyard I*), *aff'd*, 695 F.3d 1257 (Fed. Cir. 2012). Section 5109A allows RO decisions to be reviewed on the basis of CUE, whereas section 7111 allows Board decisions to be reviewed for CUE. *See DAV*, 234 F.3d at 686-87 (discussing the history of Congress's amendment to title 38, U.S. Code, to allow revision of veterans benefits decisions on the basis of CUE).

Following the 1997 statutory changes, pursuant to section 7111, the Secretary promulgated new regulations governing the revision of Board decisions on the basis of CUE, including 38 C.F.R. §§ 20.1400(b) and 20.1401(a). The Secretary provides in § 20.1400(b) that "[a]ll final Board decisions" are subject to revision on the grounds of CUE, except "[d]ecisions on issues which have been appealed to and decided by a Court of competent jurisdiction" and "[d]ecisions on issues which have subsequently been decided by a court of competent jurisdiction." 38 C.F.R. § 20.1400(b). In § 20.1401(a), the Secretary further provides that

> [u]nless otherwise specified, the term "issue" in this subpart means a matter upon which the Board made a final decision (other than a decision under this subpart). As used in the preceding sentence, a "final decision" is one which was appealable under Chapter 72 of title 38, United States Code, or which would have been so appealable if such provision had been in effect at the time of the decision.

38 C.F.R. § 20.1401(a) (2014).

The central question in this case is whether section 7111 or the Secretary's governing regulations, §§ 20.1400(b) and 20.1401(a), preclude a motion to revise a Board decision on an issue that had been abandoned on appeal to the Court.

5

A.  Statutory Interpretation of Section 7111 and Reasonableness

of §§ 20.1400(b) and 20.1401(a)

It is undisputed that the plain language of section 7111 does not speak to the precise issue. Section 7111(a) states that "[a] decision by the Board is subject to revision on the grounds of [CUE]. If evidence establishes the error, the prior decision shall be reversed or revised."  38 U.S.C. § 7111(a).  On its face, section 7111(a) does not limit the types of Board decisions that are subject to revision on the basis of CUE.  *See DAV*, 234 F.3d at 693 (recognizing that section 7111 is silent as to which Board's decisions are reviewable for CUE).  However, the Secretary's regulation carves out two exceptions:  Section 20.1400(b) provides that "[a]ll final Board decisions" are subject to revision on the grounds of CUE, except "[d]ecisions on *issues* which have been *appealed to and decided by* a Court of competent jurisdiction" and "[d]ecisions on *issues* which have subsequently been *decided by* a court of competent jurisdiction."  38 C.F.R. § 20.1400(b) (emphasis added).

In *DAV*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) rejected the petitioners' challenges to §§ 20.1400(b) and 20.1400(a), finding that these regulations were neither contrary to section 7111, nor arbitrary and capricious.  234 F.3d at 693-94.  With respect to § 20.1400(b), the Federal Circuit concluded that this regulation was consistent with section 7111 and Congress's intent to extend the principles underlying CUE review of RO decisions to CUE review of Board decisions – that "a lower tribunal cannot review the decision of a higher tribunal."  *Id.*; *see also Winsett v. Principi*, 341 F.3d 1329, 1331 (Fed. Cir. 2003) (stating that *DAV* interpreted § 20.1400(b) as "'prevent[ing] the Board from reviewing a previous Board decision on an issue for CUE when the previous issue has been appealed to, or decided by, a court of competent jurisdiction such as the Court of Appeals for Veterans Claims, *and* that reviewing court has decided the issue the claimant seeks to review for CUE'" (quoting *DAV*, 234 F.3d at 693) (emphasis added)).  The Federal Circuit further explained:

> [I]f a superior court, such as the Court of Appeals for Veterans Claims, affirms the determination of the Board on a particular issue, that Board decision is replaced by the Court of Appeals for Veterans Claims decision on that issue. *Thus, there is no longer any decision by the Board that can be subject to revision.*

*Id.* (emphasis added); *see also Winsett*, 341 F.3d at 1331 ("[A] contrary interpretation of the rule would effectively allow a lower tribunal to review the decision of a higher tribunal – a situation that is not logical.").

With respect to § 20.1401(a), the Federal Circuit concluded that this regulation was likewise consistent with section 7111 and was a reasonable exercise of the Secretary's rulemaking authority to resolve an ambiguity in the word "decision" as used in section 7111. *DAV*, 234 F.3d at 694. The Federal Circuit continued:

> By defining "issue" as a "matter" on which the Board made a final decision, the rule makes it possible for a claimant to bring a separate CUE [motion] with respect to each distinct *claim* addressed in a Board decision. Thus, the VA resolved the ambiguity in [section] 7111 in favor of the veteran.

*Id.* (emphasis added).

In this case, the appellant filed with the Court an NOA of the December 2006 Board decision and the Court issued a memorandum decision that deemed abandoned any challenge to that part of the Board's December 2006 decision denying an initial compensable disability rating for bilateral hearing loss, but then purported to "affirm[]" the Board's decision. *See Cacciola,* 2011 WL 2530942, at *4. Therefore, the Court must decide whether that part of the Board's December 2006 decision denying an initial compensable disability rating for bilateral hearing loss, which was deemed abandoned in the Court's June 2011 memorandum decision, constitutes an *issue appealed to and decided by* the Court within the meaning of § 20.1400(b)(1).

### B. Regulatory Interpretation

The "interpretation of a . . . regulation is a question of law" that the Court reviews "de novo." *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). The starting point in interpreting a regulation is its plain language, for "if the meaning of the regulation is clear from its language, that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). Where the plain language is ambiguous, the Court must consider the reasonableness of the Secretary's regulatory interpretation. *Mason v. Shinseki*, 26 Vet.App. 1, 6 (2012). An agency's interpretation of its own regulations is entitled to substantial deference by the Court. *See United States v. Cleveland Indians Baseball Co*., 532 U.S. 200 (2001); *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997). This high degree of deference applies even when that

interpretation is first advanced during litigation. *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005)).

### 1. The Secretary's Definition of "Issue"

As noted above, the Federal Circuit has upheld the Secretary's definition of "issue" as the term is used in regulations governing motions to revise a final Board decision on the basis of CUE. Regulatory section 20.1401(a) provides that "issue" "means a matter upon which the Board made a final decision (other than a decision [on a CUE motion])." In upholding this regulation as consistent with section 7111 and as a reasonable exercise of the Secretary's rulemaking authority, the Federal Circuit explained that "[b]y defining 'issue' as a 'matter' on which the Board made a final decision, the rule makes it possible for a claimant to bring a separate CUE [motion] with respect to each distinct claim addressed in a Board decision." *DAV*, 234 F.3d at 694. This Court, in *Hillyard I*, 24 Vet.App. at 350-54, and the Federal Circuit, in *Hillyard v. Shinseki*, 695 F.3d 1257, 1260 (Fed. Cir. 2012) (*Hillyard II*), acknowledged and confirmed, respectively, that the Federal Circuit's decision in *DAV* equates "issue" with a "claim" and "not a theory or element of a claim."

However, *Hillyard I* and *II* were concerned with the distinction between issues or claims and theories in support of a claim, not elements of a claim.[2] A claim for VA disability compensation

---

[2] Although there have been efforts to definitively define what is and is not a "claim," such efforts have not produced uniformity. *See*, *e.g.*, *Hillyard I*, 24 Vet.App. at 350 n.3, 355 (noting that the terms "issue," "claim," and "matter" have been used inconsistently by VA regulation, this Court, and the Federal Circuit) and *Rice v. Shinseki*, 22 Vet.App. 447, 451-54 (2009) (noting that "[t]he term 'claim' . . . has been used to describe a wide variety of circumstances in our jurisprudence"). For example, although the Court has held that "a request for [a total disability rating based upon individual unemployability (TDIU)] . . . is not a separate claim for benefits," and there is no freestanding claim for an earlier effective date, *see Rice*, 22 Vet.App. at 453-54, and *Rudd v. Nicholson*, 20 Vet.App. 296, 300 (2006), this Court and the Federal Circuit often refer to appeals from effective-date determinations and denials of entitlement to TDIU as "claim[s]." *See, e.g.*, *Geib v. Shinseki*, 733 F.3d 1350, 1351, 1354 (Fed. Cir. 2013) (referring to a "TDIU claim"); *Githens v. Shinseki*, 676 F.3d 1368, 1369, 1370 (Fed. Cir. 2012) (same); *Smith v. Shinseki*, 647 F.3d 1380, 1382, 1385 (Fed. Cir. 2011) (same); *see also Stowers v. Shinseki,* No. 12-2823, __ Vet.App. __, __, 2014 WL 1979842, at *1 (2014) (referring to veteran's "claim" for an earlier effective date); *Taylor v. Shinseki*, 21 Vet.App. 126, 127 (2007) (same). Likewise, although an assertion of CUE is a "motion" or "request" to reverse or revise a decision by the Secretary, "[m]otions alleging [CUE] . . . in a prior decision have also often been referred to as 'claims.'" *Rice*, 22 Vet.App. at 451; *see also DAV*, 234 F.3d at 694 (referring to a "CUE motion").

contains five necessary elements: (1) Veteran's status, (2) present disability, (3) service connection, (4) degree of disability, and (5) effective date. *See D'Amico v. West*, 209 F.3d 1322, 1326 (Fed. Cir. 2000). Although *Hillyard I* and *II* referred to *elements of a claim*, neither decision explained why the Court might have considered § 20.1409(c) to bar CUE challenges based on separate *elements*, particularly "downstream" elements of a claim. *See Holland v. Gober*, 10 Vet.App. 433, 436 (1997) (recognizing the difference between the upstream elements necessary to establish entitlement to benefits and the downstream elements of disability rating and effective date). Consequently, the Court now concludes that the discussions in *Hillyard I* and *II* regarding what constitutes an issue are narrower than perhaps the decisions suggest. *See United States v. County of Cook, Ill.*, 170 F.3d 1084, 1088 (Fed. Cir. 1999) (cases that do not squarely address an issue are not binding precedent); *Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."). Otherwise, the Court would contravene established caselaw, which recognizes that downstream elements of a claim can be appealable issues in their own right and that a decision "regarding a claim for benefits might not resolve, or even address, all necessary elements of the application for benefits." *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997); *see id.* at 1158-59 (holding that, because there are multiple elements of each claim, claimants may file a separate Notice of Disagreement as to each element within their claims); *see also Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997) (explaining that "a veteran's overall claim, or case, for benefits is comprised of separate issues," and that this Court "has jurisdiction to consider an appeal concerning one or more of those issues").

The Court further observes that consistent with caselaw, the Board, this Court, and the Federal Circuit have routinely reviewed CUE challenges to elements of a claim finally decided in a prior Board decision. *See*, *e.g.*, *Johnston v. Nicholson*, 421 F.3d 1285, 1286 (Fed. Cir. 2005) (claimant alleged CUE in 1989 Board decision that failed to apply 38 C.F.R. § 4.16(c) and grant him TDIU); *Miller v. Shinseki*, No. 12-3529, 2014 WL 1584518, at *1 (U.S. Vet. App. Apr. 22, 2014) (mem. dec.) (vacating Board decision that found no CUE in an earlier 1977 decision of the Board denying TDIU for service-connected plantar calluses, and remanding the matter); *Johannesen v. Shinseki*, No. 12-2644, 2014 WL 903092, at *1 (U.S. Vet. App. Mar. 10, 2014) (mem. dec.) (Board

adjudicated motion to revise 2006 Board decision denying an initial compensable rating for bilateral tinnitus). Moreover, the Secretary's position on appeal is consistent with this precedent. *See* Secretary's Suppl. Br. at 10-11 ("Here, the issue of the disability rating assigned for [a]ppellant's hearing loss was not appealed to and decided by the Court. Therefore, the Board was not prevented from considering [a]ppellant's motion for revision based on CUE as to that issue.").

The Court is bound by the high degree of deference that the Federal Circuit traditionally offers to the Secretary's interpretation of his regulation, even when the interpretation is first advanced during litigation. *See Reizenstein*, *supra*; *see also Walker v. Shinseki*, 708 F.3d 1331 (Fed. Cir. 2013). Even though effective date and disability rating are elements of a single claim for VA disability compensation, for purposes of determining which issues in a final Board decision are reviewable for CUE, it is clear from the Secretary's interpretation that the Board's determinations regarding effective date and disability rating are separate *issues* that are subject to revision on the basis of CUE. Therefore, for purposes of determining whether the Board's decision on an *issue* has been appealed to and decided by the Court, an "issue" – i.e., a matter upon which the Board made a final decision – may include an *element* of the appellant's claim for service-connected disability compensation benefits. Accordingly, the Court concludes that the December 2006 Board decision finally decided two issues – effective date and disability rating, which were related to the same claim for compensation for bilateral hearing loss – and that the Board's decision on each issue is subject to revision on the basis of CUE, unless the decision was appealed to and decided by the Court, or subsequently decided by the Court. 38 C.F.R. § 20.1400(b)(1) and (2).

### 2. Issues Appealed to the Court

The Court begins with the basic principle when an appellant files an NOA with the Court, it is the "*entire Board decision* that constitutes the final decision" on appeal. *Fagre v. Peake*, 22 Vet.App. 188, 191 (2008) (emphasis added). Therefore, when the Board promulgates a single decision that decides multiple issues at the same time and in the same document, the Court has jurisdiction over all issues finally decided in the Board's decision. *Id.*; *see Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000) ("A 'decision' of the Board, for purposes of the Veterans Court's jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted . . . , or they are denied."); *cf. Breeden v. Principi*, 17 Vet.App. 475,

10

478 (2004) (holding that the Court does not have jurisdiction over claims remanded by the Board, because there is no final Board decision with respect to the benefit sought).

The Court recognizes that *Fagre* addressed a situation in which the appellant filed a motion for Board reconsideration of only one of many issues finally decided in the same Board decision, and that the Court was presented with the question whether the motion abated the finality of the entire decision for purposes of determining the timeliness of an NOA. 22 Vet.App. at 190-91; *cf. Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991). Nonetheless, the Court finds the rationale in *Fagre* generally applicable to all NOAs filed at the Court. *See* 38 U.S.C. § 7252 ("The Court . . . shall have exclusive jurisdiction to review decisions of the Board."); 38 U.S.C. § 7266(a) (a person adversely affected by a "final decision of the Board" shall file an NOA with the Court); *see also May* v. *Shinseki*, 544 F. App'x 1002, 1005-06 (Fed. Cir. 2013) (relying on the rationale in *Fagre* to affirm this Court's dismissal of a second NOA filed in regard to the same Board decision). The Court "will not parse the Board decision into, or by, the various decisions it rendered with regard to the appellant's claimed disabilities." *Fagre*, 22 Vet.App. at 191. Instead, the Court assumes jurisdiction over all issues finally decided in the Board decision and it is only through the appellant's express abandonment of an issue in his brief, or the failure to challenge and present argument on issues decided in a multi-issue Board decision, that the issues to be decided by the Court generally are limited. *See*, *e.g.*, *Johnson v. Shinseki*, 26 Vet.App. 237, 239 (2013) (en banc) (stating that the appellant did not address the Board's denial of certain matters and, therefore, he "abandoned any challenge to the Board's decision regarding these matters and the Court need not address the Board decision with respect to these matters").

This conclusion is consistent with the Court's Notice of Appeal form, which requests only the date of the Board decision being appealed and does not ask a potential appellant to specify the issues in a Board decision he is appealing to the Court. *See* U.S. VET. APP. R. Appendix A; *cf.* U.S. VET. APP. R. 3(c)(2) (requiring an NOA to "reasonably identify the Board decision appealed from and be capable of being reasonably construed, on its face or from the surrounding circumstances, as expressing an intent to seek Court review of that decision"). Although there is no requirement that an appellant use this form, the Court takes judicial notice that it is the form used in the overwhelming majority of appeals to the Court. *See Monzingo v. Shinseki*, 26 Vet.App. 97, 103

11

(2012) ("The Court may take judicial notice of facts of universal notoriety that are not subject to reasonable dispute.").

Based on the foregoing, the Court finds the appellant's NOA from the Board's December 4, 2006, decision constituted an appeal of all issues finally decided in the same document, which included the Board's denial of an initial compensable disability rating for bilateral hearing loss. Therefore, the Court holds that the Board's decision on this issue was *appealed to* the Court within the meaning of § 20.1400(b)(1). The only remaining question is whether the issue, which was deemed abandoned, was *decided by* the Court within the meaning of § 20.1400(b)(1).

### 3. Issues Decided by the Court

The Secretary asserts that the language "decided by" on its face requires some merits consideration and not merely a notation that the issue was abandoned. Secretary's Suppl. Br. at 13-14. Even assuming § 20.1400(b)(1) was not plain on its face, the Secretary urges the Court to defer to the interpretation of the regulation he expressed when he issued a clarifying amendment to the regulation.[3] *Id.*

In December 1999, the Secretary explained that he "intended, both in the proposed rule and in the final rule, that § 20.1400(b)(1) would insulate from CUE revision only the decision on issues appealed to and decided by a court." 64 Fed. Reg. 73,413-02, 73,414 (Dec. 30, 1999). The Secretary stated that he had inadvertently created ambiguity "in the case of a Board decision on more than one issue where fewer than all issues were appealed to and decided by a court" and that by amending the language of the regulation, he clarified that "in the case of a Board decision on more than one issue, the Board's decision on issues appealed to and decided by a court of competent jurisdiction is not subject to subsequent revision on the grounds of [CUE], but the Board's decision on issues not appealed to or decided by a court of competent jurisdiction is subject to such revision." 64 Fed. Reg. at 73,413. The Secretary contends that his interpretation of the regulation's language as not

---

[3] Before the Secretary issued the amendment, the final rule stated: "All final Board decisions are subject to revision under this subpart except: (1) Those decisions which have been appealed to and decided by a court of competent jurisdiction; and (2) Decisions on issues which have subsequently been decided by a court of competent jurisdiction." 64 Fed. Reg. 2134-01, 2139 (Jan. 13, 1999). The Secretary amended the language of § 20.1400(b)(1) by replacing "[t]hose decisions" with "[d]ecisions on issues." *See* 64 Fed. Reg. at 73,414.

12

preventing CUE revision of issues abandoned on the merits before the Court is consistent with the statutory and regulatory scheme allowing for collateral attacks on Board decisions. Secretary's Suppl. Br. at 15. The Court agrees.

Together the language of the regulation and the Secretary's stated intent in promulgating the regulation support the conclusion that § 20.1400(b) insulates from CUE revision only decisions on issues that have been decided by a court, and that in the case of a single Board decision that finally decides more than one issue in the same document, an appellant may choose not to seek a decision by the Court on all issues decided in that single Board decision. *See* 64 Fed. Reg. 73,413; 38 C.F.R. §§ 20.1400-.1401; *see also May v. Nicholson*, 19 Vet.App. 310, 317-19 (2005) (discussing VA's regulation, 38 C.F.R. § 20.1400(b), as precluding a CUE motion with regard to the same matter dealt with by the Court on direct appeal); *id*. at 320 (stating that "§ 20.1400(b) appears to permit a CUE claim to be properly filed after the completion of judicial review if that claim is brought as to a matter that was not the subject of such judicial review").

In his direct appeal from the Board's December 2006 Board decision, the appellant did not present any argument in his brief with respect to the Board's denial of an initial compensable disability rating for bilateral hearing loss and, therefore, the Court deemed the issue abandoned. *See Cacciola*, 2011 WL 2530942 at *1; *see also* R. at 40. The Court has long recognized an appellant's right to abandon some or all the issues presented on appeal. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993) (stating that the appellant's "arguments and requests for relief in his pleadings and at oral argument were limited to the tinnitus claim [and,] [t]herefore, the Court considers the veteran . . . to have abandoned his appeal with respect to the hearing-loss claim and, accordingly will not review the BVA decision with respect to that claim"); *see also Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997) (claims not addressed in appellant's pleadings are deemed abandoned "as part of th[e] appeal"); *Grivois v. Brown*, 6 Vet. App. 136, 138 (1994) (noting "issues or claims not pressed are deemed abandoned"). Whether an appellant expressly abandons an issue on appeal, or the Court deems an issue abandoned by the appellant's failure to assert any challenge and argument regarding the Board's decision on an issue, the effect is the same – the appellant generally has relinquished his right to judicial review of the Board's decision on an issue. *See* BLACK'S LAW DICTIONARY 2 (7th ed. 1999) (defining "abandonment" as the "relinquishing of a right or interest with the intention of

never again claiming it"). Consequently, the Court holds that a determination that an issue has been abandoned on appeal means that the Court has not reviewed the merits of the Board's decision.

The Court acknowledges that in the past it has not acted uniformly or used precise terminology when it has found issues abandoned on appeal. For example, when an appellant fails to present any arguments regarding the Board's decision on an issue, the Court has stated at times that the issue or claim is deemed abandoned, and that is the end of the matter. *See*, *e.g.*, *Tropf*, 20 Vet.App. at 318-19 (stating "any issues on appeal concerning this claim are abandoned"). At other times, the Court has expressly stated that the Court will not review or address the abandoned matter. *See*, *e.g.*, *Acevedo v. Shinseki*, 25 Vet.App. 286, 287 (2012) (deeming claims for which the appellant failed to present argument abandoned and stating the Court "will not review them"). Additionally, regardless how explicit the Court has been in finding an issue or claim abandoned, it is not always transparent from the Court's decretal paragraphs what issues have been decided by the Court in its decision. *Compare Ford v. Gober*, 10 Vet.App. 531, 535-56 (1997) (finding issues not addressed in pleadings "abandoned" and generally stating "the Court affirms the . . . BVA decision"), *with Gill v. Shinseki*, 26 Vet.App. 386, 392 (2013) (stating "that part of the Board's . . . decision that is on appeal is AFFIRMED"), *and Johnson*, 26 Vet.App. at 248 (stating "the Board's . . . decision regarding the matters before the Court are AFFIRMED").

To remove any ambiguity, the Court holds that a determination that an issue has been abandoned signifies the appellant's relinquishment of the right, on direct appeal, to a decision by the Court regarding the Board's adverse decision on the abandoned issue. Accordingly, regardless of whether the Court's decretal paragraph purports to generally "affirm" the Board's decision, to determine whether the Board's final decision on an issue was *decided by* the Court within the meaning of § 20.1400 (b), the body of the Court's decision must be examined to determine whether the issue was abandoned and, therefore, not reviewed on the merits.[4]

---

[4] An appropriate course of action, when the Court determines that an issue has been appealed to the Court, but abandoned, is to *dismiss* the appeal as to that issue. *See Tellex v. Principi*, 15 Vet.App. 233 (2001) (dismissing an appeal when the appellant failed to present any arguments regarding the issue decided by the Board and the Court lacked jurisdiction over the matter addressed by the appellant). By dismissing the appellant's appeal as to the abandoned issue, it will be readily apparent from the Court's decretal paragraph that the abandoned issue was not *decided* by the Court.

14

To be clear, the Court notes that abandonment of an issue on appeal, whether express or implied, is different from the situation in which an appellant states that he is appealing the Board's decision on an issue, but then makes no arguments, or insufficient arguments, challenging the Board's determination. In such instances, the Court generally affirms the Board's decision as a result of the appellant's failure to plead with particularity the allegation of error and satisfy his burden of persuasion on appeal to show Board error.[5] *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006), *rev'd on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal).

Based on the foregoing, the Court concludes that, in accordance with VA's veteran-friendly system and Congress's endorsement of VA's policy to allow claimants to collaterally attack otherwise final decisions by the Secretary, *see* 38 U.S.C. §§ 5109A, 7111, an appellant's abandonment of the right to a decision by the Court on direct appeal of an issue in a Board decision does not otherwise preclude him from collaterally attacking the Board decision on that issue on the basis of CUE. Consistent with the Secretary's interpretation of § 20.1400(b)(1), an issue abandoned on appeal has not been *decided by* the Court and, therefore, allowing a claimant to seek revision does not create the anomalous situation of allowing a lower tribunal to review the decision of a higher tribunal. *See Winsett*, *DAV*, and *Smith*, all *supra*.

---

[5] This is not to say, in the case of a pro se appellant who fails to assert any specific challenge or argument regarding the Board's decision on an issue, that the Court lacks discretion to review the merits of the Board's decision as to that issue. Because an NOA places all final Board determinations in the same Board decision on appeal, absent an express waiver of the right to judicial review of the Board's decision on a particular issue, the Court maintains jurisdiction to review the Board's decision. *See Patton v. West*, 12 Vet.App. 272, 283 (1999) (finding "support for the proposition that U.S. courts of appeals have the discretion to raise legal issues not raised by a party" (citing *Davis v. United States*, 512 U.S. 452, 464, 465, (1994) (Scalia, J., concurring) (although "refusal to consider arguments not raised is a sound prudential practice, . . . there are times when prudence dictates the contrary"; courts have "obligation to decide according to law"); *United States v. Dickerson*, 166 F.3d 667, 683-84 (4th Cir. 1999) (considering constitutionality of statute where U.S. Government elected not to pursue issue); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (although appellate courts are essentially "arbiters of legal questions presented and argued by the parties before them[,] . . . not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research."))).

In this case, the Court's June 2011 memorandum decision was less than precise when, after solely reviewing the merits of the appellant's arguments for an earlier effective date, the Court stated that "the Board's December 4, 2006, decision is AFFIRMED." *Cacciola*, 2011 WL 2530942, at *4; *see also* R. at 44. Nonetheless, an examination of the decision reveals that, because the appellant did not present any arguments addressing the Board's denial of an initial compensable disability rating for bilateral hearing loss, the Court deemed the issue abandoned and did not address the merits of the Board's decision on this issue. Accordingly, the Court holds that although the issue was appealed to the Court, it was not decided by the Court in the June 2011 memorandum decision and, therefore, the Board's December 2006 decision on this issue is subject to revision on the basis of CUE.

## C. CUE in the December 2006 Decision

### *1. Effective Date*

Relying on 38 C.F.R. § 20.1400(b)(1) the Board, in its March 29, 2012, decision, dismissed the appellant's motion to reverse or revise on the basis of CUE its December 4, 2006, decision with respect to the earlier effective date, because the 2006 Board decision on that issue had been appealed to and decided by the Court. R. at 8-9. This finding is supported by the record. The Court's June 2011 memorandum decision considered the appellant's arguments for an effective date earlier than August 6, 1998, but found them unavailing. *See Cacciola*, 2011 WL 2530942, at *2-4. The Court affirmed the Board's decision on this issue and, therefore, the decision is no longer subject to revision. *See DAV*, *supra*. The Board's 2006 decision on the issue was replaced by and subsumed by the Court's June 2011 memorandum decision. *See Winsett*, 341 F.3d at 1332 (concluding that § 20.1400(b) foreclosed the appellant's request to revise a 1995 Board decision that had been affirmed on appeal by this Court and the Federal Circuit). The appellant's remedy, had he disagreed with this Court, was to pursue an appeal to the Federal Circuit; however, the record demonstrates that he did not pursue an appeal. Accordingly, the Board, in its 2012 decision, did not err in dismissing the appellant's motion alleging CUE in the Board's 2006 denial of an effective date earlier than August 6, 1998.

## 2. Compensable Disability Rating

To establish CUE, the following conditions must be met. First, either (1) the correct facts contained in, or constructively contained in, the record were not before the adjudicator, or (2) the statutory or regulatory provisions extant at the time were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). Finally, the error must have "manifestly changed the outcome" of the decision being attacked on the basis of CUE when the decision was rendered. *Id.* at 313-14, 320; *see Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell*, *supra*). When the Court reviews a Board determination that there was no CUE in a prior final Board decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A), and whether it is supported by an adequate "statement of reasons or bases," 38 U.S.C. § 7104(d)(1). *See Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

In the decision on appeal, the Board considered the appellant's argument that the 2006 Board decision failed to account for his inability to hear normal conversation, or comport with the results of an April 1985 audiometric test that showed a severe level of hearing loss, but determined that the appellant failed to demonstrate error that would have manifestly changed the outcome of the 2006 decision. R. at 9-15. The Board explained that the April 1985 test did not include speech audiometry, rendering it insufficient to determine a level of auditory acuity under the applicable rating criteria, and that the appellant's general assertion of more severe hearing loss was appropriately outweighed by the audiometric examination reports of record. R. at 11-15; *see* 38 C.F.R. § 4.85(a) (1998 & 2006).

The Board observed that the record included, other than the inadequate April 1985 report, four audiometric examination reports, three of which the Board addressed in the December 4, 2006, decision. R. at 12-14. The Board noted that a hearing loss disability rating is derived by a mechanical application of the rating schedule based upon the audiometric test results, and upon review of the February 1998, August 2000, and October 2004 results, the Board concluded that the

2006 Board decision properly found the appellant's hearing impairment not compensable. *See Lendenmann v. Principi,* 3 Vet.App. 345, 349 (1992) (the assignment of a disability rating is based on a purely mechanical application of the rating schedule to the objective medical findings). The Board also acknowledged that the December 2006 Board decision did not address a February 1997 audiometric examination, but found that any error did not manifestly change the outcome of the 2006 decision because application of the examination results to the rating criteria did not warrant a compensable rating. R. at 14. Finally, the Board found that the 2006 Board correctly considered whether referral for extraschedular consideration was warranted and found the evidence did not show an exceptional or unusual hearing loss disability.

In his supplemental brief, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for (1) discounting the April 1985 evidence of the severity of his hearing loss, and (2) refusing to refer the claim for an extraschedular rating. Appellant's Suppl. Br. at 13-20. The Secretary argues that neither of the alleged errors establishes CUE in the December 2006 Board decision. Secretary's Suppl. Br. at 20-23. The Secretary further contends that the appellant's arguments appear to challenge the 2012 Board decision's reasons and bases as if the evaluation of the appellant's hearing loss was before the Board on the merits, and not in the posture of a CUE challenge. *Id.* at 20. The Court agrees.

The appellant fails to assert that the December 2006 decision was the product of CUE; he fails to demonstrate that the correct facts were not before the adjudicator or that the Board misapplied the law at the time; and he fails to assert error that would have manifestly changed the outcome of the 2006 decision. Instead, the crux of his argument is that the 2012 Board decision did not adequately weigh the 1985 examination report and that the Board "may have" reached a different conclusion had this evidence been properly considered. Appellant's Suppl. Br. at 14-18. By confining his arguments to the analysis in the 2012 decision here on appeal, the appellant misapprehends the nature of a collateral attack. Although the Board is required to provide an adequate statement of reasons or bases for its determination whether the 2006 decision contained CUE, the Board does not reweigh the evidence. As noted above, when a prior final Board decision is challenged for CUE, the Board must consider whether "the correct facts in . . . the record were not before the adjudicator" or "the statutory or regulatory provisions in existence at the time were

incorrectly applied," and whether any error manifestly changed the outcome of the decision challenged for CUE. *See Damrel* and *Russell*, both *supra*. This is precisely the analysis undertaken by the Board in its 2012 decision.

Although the 2006 Board decision did not discuss the 1985 audiometric test, the 2012 Board decision explained that disability ratings for hearing loss are derived from a mechanical application of the rating schedule and that the rating criteria required *both* controlled speech discrimination testing *and* pure tone audiometry tests. R. at 10. Hence, when the Board stated that speech audiometry testing was not performed in April 1985, "and therefore, the results of the April 1985 testing were insufficient to determine a level of auditory acuity under the applicable rating criteria" (R. at 11), it made a statement sufficient to explain why the Board discounted the test results and why the appellant's argument was insufficient to establish CUE – the 1985 report did not contain *both* criteria necessary to apply the rating schedule.

The appellant's contention that the Board should have addressed the 1985 audiological examiner's description of his hearing loss as moderate to severe is unpersuasive. As an initial matter, the appellant fails to explain the relevance of a single 1985 audiological examination to the determination of the severity of his hearing loss, which was not found to be service connected until August 1998. *See Hilkert supra*. Moreover, even assuming the examiner's assessment demonstrated some level of compensable hearing loss, the record contained four additional audiological examinations, which supported a noncompensable disability evaluation. Consequently, the appellant's argument at its core amounts to no more than a disagreement with how the evidence was weighed, which cannot constitute CUE. *See Russell*, *supra*.

The appellant's final argument, that the Board failed to provide an adequate statement of reasons or bases for its determination that his hearing loss was not exceptional or unusual, is similarly unpersuasive. The appellant seeks to remand this matter for the Board to "consider the evidence and provide an appropriate explanation . . . why [his] hearing loss does or does not warrant referral for extraschedular consideration." Appellant's Suppl. Br. at 20. Once again, the appellant misunderstands the nature of a collateral attack and, therefore, fails to assert any error in the 2006 decision that must have manifestly changed the outcome of the decision. Upon consideration of his arguments, the Court holds that he has not met his burden of demonstrating that the 2006 Board

committed CUE in failing to refer the matter for extraschedular consideration, or that the Board, in the decision on appeal, failed to adequately explain why the 2006 decision is not the product of CUE. *See Hilkert*, *supra*. The Court thus holds that the Board's determination that the December 2006 decision was not the product of CUE is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A).

## IV. CONCLUSION

Accordingly, the Board's March 29, 2012, decision is AFFIRMED.


KASOLD, *Chief Judge*, concurring in the result: I write separately to clarify that although we generally refer to issued Board decisions in the singular, the reality is that claimants often seek multiple benefits and the Board frequently renders – in its issued decision – multiple decisions as to each benefit sought. Although a panel of the Court found it appropriate to delay a claimant who seeks Board reconsideration of one decision on benefits from appealing the other adverse, final decisions rendered in the same issued decision until the request for reconsideration on the one issue was resolved, *see Fagre v. Peake,* 22 Vet.App. 188, 191 (2008), the underlying rationale is suspect.

The *Fagre* panel reasoned that "the Court will not parse the Board decision into, or by, the various decisions it rendered with regard to the appellant's claimed disabilities." *Id.* at 190-91. This rationale ignores, however, the fact that most issued Board decisions are "parsed into, or by, the various decisions" rendered in the issued Board decision. Indeed, many issued Board decisions include multiple decisions on a claim for benefits – affirming some benefits, remanding the claim as to other benefits, and denying some benefits. It is well settled that the Court lacks jurisdiction over that part of an issued Board decision that affirmed benefits or remanded as to some benefits, *see* 38 U.S.C. §§ 7252(a) and 7266(a); *Hibbard v. West*, 13 Vet.App. 546, 549 (2000) (per curiam order) (noting Court's jurisdiction is limited to appeals of final adverse Board decisions), but there is no dispute that the Court has jurisdiction over that part of the Board decision that denied benefits when an appeal as to that part of the decision is filed. *E.g.*, *Tyrues v. Shinseki*, 732 F.3d 1351, 1355 (Fed. Cir. 2013) (noting that a "non-remanded portion of a mixed decision from the Board is final for the purposes of § 7266(a) and must be appealed within 120 days from the date of judgment,"

subject only to equitable tolling); *Evans v. Shinseki*, 25 Vet.App 7, 8 (2011) (noting lack of jurisdiction over matters remanded by the Board, yet exercising jurisdiction over an adverse, final decision of the Board in the same issued decision).

Because the rationale of *Fagre* is suspect, I do not join my colleagues' reliance on it for today's decision. Rather, I concur in the result because common sense dictates that a general NOA – as was used in this case and is used in the overwhelming majority of appeals to the Court[6] – places on appeal all adverse, final decisions of the Board contained in the issued Board decision being appealed. In this context, I concur with the holding today that when one or more adverse, final decisions of the Board contained in an issued Board decision is or are abandoned on appeal and not decided by the Court, a motion for revision of that Board decision based on CUE is not foreclosed. I also note that this case does not involve an NOA explicitly limited to only one adverse final decision or select multiple adverse final decisions contained in an issued Board decision, as has been the case in a limited number of appeals, generally with counsel representation. *Cf. Lasovick v. Brown*, 6 Vet.App. 141, 149 (1994) (recognizing that language quoted from a particular opinion, "although universal in  scope, does not constitute binding precedent beyond the facts there before the Court").

---

[6] Although the Federal Circuit broadly states in *May v. Shinseki*, 544 F. App'x 1002, 1005-06 (Fed. Cir. 2013), that an appeal of a Board decision places all issues on appeal, this clearly is an overstatement because favorable decisions and matters remanded in an appealed Board decision are not on appeal, as noted in the text of my statement. *May* simply did not contemplate the issues discussed in our decision today; it also is not precedential.