**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 16-0720

JOSE R. ROSSY, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided December 13, 2017)

*Michael S. Just*, of Providence, Rhode Island, was on the brief for the appellant.

*Meghan Flanz,* Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Nicholas R. Esterman,* all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

TOTH, *Judge*: Jose R. Rossy served in the Army from June 1949 to October 1952. The only issue before the Court concerns his service-connected bilateral hearing loss. In a December 2015 decision, the Board denied a compensable schedular rating for that condition, as well as a referral for a rating based on extraschedular consideration. He appeals, arguing that the Board erred in denying extraschedular referral because it wrongly concluded that the applicable schedular rating criteria contemplated the functional effects of his hearing loss. After he filed his opening brief, we decided *Doucette v. Shulkin*, 28 Vet.App. 366 (2017), which affirmed a Board decision denying extraschedular referral when the only functional effects alleged were aspects of hearing loss. Concluding that *Doucette* directs the outcome here, we likewise affirm.

**I. BACKGROUND**

More than 50 years after leaving service, Mr. Rossy sought disability compensation for bilateral hearing loss. During development of the claim, he underwent numerous VA audiology examinations and submitted a private audiology report. These documents reflect that the veteran's

main complaint relating to his hearing loss was not being able to hear conversations, especially in noisy or crowded places, including difficulty hearing his wife. Based on audiology test results, the VA regional office eventually granted service connection for left and right ear sensorineural hearing loss but assigned a noncompensable evaluation. Dissatisfied with this rating, Mr. Rossy appealed to the Board.

In the December 2015 decision on appeal, the Board denied a compensable schedular rating for bilateral hearing loss. On the question of a rating on an extraschedular basis, the Board determined that referral was unwarranted because his hearing loss was "adequately contemplated by the applicable diagnostic criteria." R. at 12. Through an attorney, Mr. Rossy appealed the portion of the Board decision regarding hearing loss to this Court.[1]

After his opening brief was filed, the Court granted the Secretary's motion to stay proceedings pending a panel decision in *Doucette*. Following issuance of the *Doucette* decision, the Secretary filed his brief, urging us to affirm the Board's denial. Despite being given a filing extension, Mr. Rossy did not submit a reply brief, so we have no argument from him challenging *Doucette*'s reasoning or applicability here.

## II. ANALYSIS

Although this case was submitted to a panel for resolution, we need not tread any new ground in reaching a proper disposition. Congress authorized the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. . . . based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C. § 1155. VA responded in the hearing-loss context by promulgating two tables that assign a Roman numeral value to each ear based on hearing loss reflected by controlled speech discrimination and puretone audiometry tests or, in certain situations, by a puretone audiometry test alone; a third table prescribes the appropriate disability rating to assign (0 percent to 100 percent) based upon the resulting Roman numeral values. *See* 38 C.F.R. § 4.85 & Tables VI, VIa, and VII (2017). A separate regulatory section

---

[1] The Board remanded six other issues, including a higher initial rating for post-traumatic stress disorder (PTSD). The Court has no jurisdiction over those matters. *See Warren v. McDonald*, 28 Vet.App. 214, 215 n.1 (2016). The Board also granted an earlier effective date of February 6, 2008, for the award of disability compensation for PTSD. Because Mr. Rossy makes no argument regarding the PTSD effective date, the Court will dismiss the appeal as to that matter. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-85 (2015) (en banc).

addresses how to evaluate "exceptional patterns of hearing impairment," which arise when the puretone threshold is 55 or more decibels at each of 4 specified frequencies. 38 C.F.R. § 4.86 (2017). This Court has no authority to consider whether the schedular criteria for measuring or compensating hearing loss is the optimal, or even an adequate, method. *Doucette*, 28 Vet.App. at 369 n.3; *see* 38 U.S.C. § 7252(b) ("The Court may not review the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising that schedule.").

Notwithstanding the specific schedular rating criteria prescribed for hearing loss and other disabilities, the Secretary has recognized that there might be "exceptional" cases when "schedular evaluations are found to be inadequate." 38 C.F.R. § 3.321(b)(1) (2017). In a case that presents "an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization," the Board must refer the matter to certain VA officials for a determination of whether and to what extent an extraschedular rating is appropriate. *Id.* The Board is required to consider whether a referral for extraschedular consideration is warranted in two situations: where it is expressly raised by a claimant or reasonably raised by the record. *See, e.g.*, *Colayong v. West*, 12 Vet.App. 524, 536 (1999). Either way, the analysis is the same. Since the Board did address the issue in its decision, the relevant inquiry here is whether it committed any error in determining that referral was unwarranted.

Generally, the first element or step in an extraschedular analysis is for the Board to compare the severity and type of symptoms manifested by a service-connected disability with the schedular rating criteria for that disability. *Thun v. Peake*, 22 Vet.App. 111, 115 (2008). In *Thun*, we described this step as an inquiry into whether "the claimant's disability picture is contemplated by the rating schedule." *Id*. (citing VA Gen. Coun. Prec. 6-1996 (Aug. 16, 1996)).

In *Doucette*, the Court addressed how to conduct an extraschedular analysis—specifically, the first *Thun* inquiry—in the context of a hearing loss claim. We held that the rating criteria for §§ 4.85 and 4.86 contemplate, and thus compensate for, the functional effects of hearing loss, namely difficulty understanding speech and the inability to hear sounds in various contexts. *Doucette*, 28 Vet.App. at 369. While leaving open the possibility that extraschedular consideration for hearing loss might be warranted by *other* symptoms or functional effects associated with that disability, we further held that extraschedular referral is not reasonably raised when complaints of difficulty hearing are the only complaints of record. *Id*. at 371. To hold otherwise, the Court

3

reasoned, would allow the exception to swallow the rule by requiring the Board to conduct an extraschedular analysis as a matter of course in every hearing loss claim, an outcome that would be "contrary to the Secretary's determination as to how hearing loss should be compensated." *Id.* Accordingly, we found that Mr. Doucette's complaints—"difficulty in distinguishing sounds in a crowded environment, locating the source of sounds, understanding conversational speech, hearing the television, and using the telephone"—were symptoms or functional effects contemplated by the rating criteria for hearing loss and concluded that the first *Thun* element hadn't been met. *Id.* at 371-72.

We see no basis to distinguish Mr. Rossy's case from Mr. Doucette's. Here, the only hearing loss problem alleged by Mr. Rossy was difficulty understanding conversations, particularly in noisy or crowded circumstances. But absent other factors, *Doucette* tells us that this sort of complaint is squarely within the type of symptoms and functional effects contemplated and compensated by VA's schedular rating criteria. The Board denied referral for extraschedular consideration on that basis, and we discern no error in that denial. The contrary arguments presented in the veteran's opening brief are foreclosed by *Doucette*.

Finally, for the sake of completeness, we also conclude that referral for extraschedular consideration was not warranted based on the combined effects of Mr. Rossy's service-connected disabilities. The Federal Circuit held that the "plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." *Johnson v. McDonald*, 762 F.3d 1362, 1365 (Fed. Cir. 2014).[2] But that holding did not alter the established rule that the Board need only address issues either explicitly raised by a claimant or reasonably raised by the record. *Yancy v. McDonald*, 27 Vet.App. 484, 495 (2016). In this case, Mr. Rossy's attorney did not raise a collective-impact argument in his opening brief. Such omission by itself constitutes abandonment of that argument on appeal. *See Mitchell v. Shinseki*, 25 Vet.App. 32, 38 (2011). Moreover, even upon review of the complete record before the agency filed in this Court, we find no indication that the veteran explicitly asserted that the combined effects of bilateral hearing loss and post-traumatic stress disorder—his only other service-connected condition—required extraschedular consideration. Nor was the issue reasonably raised by the record before

---

[2] We note that, in response to *Johnson*, the Secretary recently published a final rule amending § 3.321(b)(1) to prohibit extraschedular consideration based on the combined effects of more than one service-connected disability. Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830 (Dec. 8, 2017). However, because this amendment does not take effect until January 8, 2018, it is inapplicable here.

the Board. (For examples of cases where we've found the collective impact issue reasonably raised by the record, see *Yancy*, 27 Vet.App. at 496, and *Cantrell v. Shulkin*, 28 Vet.App. 382, 394-95 (2017).)

In sum, because Mr. Rossy has failed to demonstrate any Board error regarding his bilateral hearing loss, the Court will affirm the Board decision regarding that claim. *See Cacciola v. Gibson*, 27 Vet.App. 45, 57-58 (2014).

### III. CONCLUSION

Having considered the parties' briefs, applicable law, and record before the Board, we AFFIRM the December 22, 2015, Board decision as to bilateral hearing loss and DISMISS the balance of the appeal.

GREENBERG, *Judge*, dissenting: I dissent. The appellant is service connected for PTSD and hearing loss, and I believe the record reasonably raised a collective impact issue that the Board failed to address. *See Johnson*, 762 F.3d at 1365; *see also Yancy*, 27 Vet.App. at 495. The appellant has difficulties communicating because of his hearing disability and he reported during a medical examination that his PTSD causes feelings of detachment and estrangement from others. R. at 512, 353, 318, 742. I would have remanded the matter to allow the Board to address this issue in the first instance.